Argued and submitted September 23, affirmed November 19, 1997

James R. HOLDER,
· *Respondent,*

*v.*

Fred E. ELG
and Vivian M. Elg,
husband and wife,
individually and as Trustees
of the Elg Family Trust,
Mark L. Elg, Glenna A. Elg
and Tina L. Azzarella Fountain,
all individually and doing business as
GMT Rental Co. and TMG Rental Co.,
Old Farm Investment, Inc.,
an Oregon corporation
and William K. Mayle,
*Appellants.*

(94-CV-263; CA A94112)

948 P2d 763

Shawn M. Sornson filed the briefs for appellants.

John C. Babin argued the cause for respondent. With him on the brief was Babin & Keusink, P.C.

Before Riggs, Presiding Judge, and Landau and Leeson,* Judges.

LEESON, J.

---

* Leeson, J., *vice* Rossman, S. J.

**LEESON, J.**

Defendants appeal from a judgment awarding attorney fees and costs to plaintiff. We review for errors of law, ORS 20.220(1), and affirm.

The procedural background of this case is complex. In February 1991, an Idaho state court awarded judgments for plaintiffs[1] against defendants on two promissory notes worth almost $100,000. Both notes contained attorney fee provisions in the event of a successful action to collect on them. The Idaho judgments also awarded attorney fees to plaintiff. In August 1992, plaintiff filed those judgments in Multnomah County in accordance with the Uniform Enforcement of Foreign Judgments Act (UEFJA). ORS 24.105–ORS 24.185. Defendants did not satisfy the judgments. Plaintiff pursued collection in both Oregon and California, where defendants Fred and Vivian Elg, trustees of the Elg Family Trust, owned real and personal property. In September 1994, plaintiff brought an action in Oregon against defendants Fred and Vivian Elg under the Uniform Fraudulent Transfer Act (UFTA), ORS 95.200 through ORS 95.310, alleging that they had fraudulently transferred property in Oregon and California in an attempt to avoid satisfaction of the Idaho judgments. Plaintiff filed a similar action in California.

On January 2, 1996, the parties filed with the trial court a stipulation that resolved all pending issues regarding the Idaho judgments against defendants and provided that all attorney fee and cost issues should be resolved by an Oregon court. Plaintiff then filed a motion for attorney fees and costs. On March 12, 1996, the court granted the motion, awarding plaintiff $27,375.58.

Defendants appeal, assigning error to the trial court's award of attorney fees and costs to plaintiff. They argue that, under ORS 24.220(1),[2] we must apply Idaho law as it existed at the time the Idaho judgments were entered in

---

[1] Plaintiffs Debra, Raymond and Christie Holder assigned the judgments to plaintiff James R. Holder by power of attorney. "Plaintiff" in this opinion refers only to James Holder.

[2] In their brief, defendants rely on ORS 22.220. There is no such provision, and we assume that defendants mean ORS 24.220(1).

1991 to determine whether plaintiff is entitled to attorney fees. That statute provides, in part, that a "foreign judgment is enforceable in the same manner as the judgment of a sister state which is entitled to full faith and credit." According to defendants, Oregon courts must accord the final judgment of a sister state the same recognition that the judgment would receive in that state. *River City Bank v. DeBenedetti*, 90 Or App 624, 627, 752 P2d 1305 (1988). When the Idaho judgments were entered in 1991, Idaho law did not recognize the right of post-judgment attorney fees.[3] *Allison v. John M. Biggs, Inc.*, 121 Idaho 567, 826 P2d 916 (1992).[4]

■      Plaintiff responds that Oregon law should govern his entitlement to attorney fees and that Oregon law recognizes a party's right to receive post-judgment fees for collection when the original judgment awarded that party attorney fees. *Marquez v. Meyers*, 96 Or App 214, 217-18, 772 P2d 437 (1989); *Johnson v. Jeppe*, 77 Or App 685, 688, 713 P2d 1090 (1986); *see also* ORS 20.096(1) (award of attorney fees to prevailing party in action to enforce contract is proper where contract provided for attorney fees). Plaintiff is correct. However, there is a conflict between Oregon and Idaho law. Oregon courts resolve substantive issues according to the law of the state having the most significant contacts with the dispute. *Manz v. Continental American Life Ins. Co.*, 117 Or App 78, 80-82, 843 P2d 480 (1992), *mod on other grounds* 119 Or App 31, 849 P2d 549, *rev den* 317 Or 162 (1993).

■      In this case, the judgments were entered in Idaho, but they were properly filed in Oregon, and the action to collect on them was commenced in Oregon by plaintiff, an Oregon resident. Furthermore, defendants own personal and real property in Oregon. Idaho's only contact with this collection action is that it entered the original judgments; Idaho does not have an interest in the Oregon collection action on

---

[3] Defendants also argue that, because the stipulation was in response to plaintiff's action under the Uniform Fraudulent Transfers Act (UFTA), plaintiff is not entitled to an award of attorney fees. Although the UFTA does not have an attorney fees provision, each of the promissory notes on which the Idaho judgments were entered provides for attorney fees if an action to collect on the notes succeeds.

[4] In April 1994, the Idaho legislature amended its code to provide for post-judgment attorney fees for collection efforts on judgments. 1994 Idaho Sess Laws 1113 (codified as amended at Idaho Code § 12-120(4) (1994)).

those judgments. We conclude that Oregon has the most significant contacts regarding this collection action.[5]

■ Under Oregon law, plaintiff is entitled to post-judgment attorney fees and costs in this collection action. *Marquez*, 96 Or App at 217-18; *Johnson*, 77 Or App at 688. The trial court did not err in awarding attorney fees and costs to plaintiff.

Affirmed.

---

[5] In his memorandum of additional authority, to which defendants do not respond, plaintiff argues that *Restatement (Second) Conflict of Laws* § 101, comment c (1971), provides additional authority for his argument that "costs and other expenses of litigation incurred in a suit to enforce [a] judgment in [a] second state are allowed in accordance with the local law of the second state." We agree. *Restatement (Second) Conflict of Laws* § 101 provides, in part:

"A valid judgment for the payment of money will be enforced in other states only in the amount for which it is enforceable in the state where it was rendered.

"Comment:

"* * * * *

"c. Costs and other expenses of litigation incurred in the suit brought to enforce the original judgment in a second state are allowed in accordance with the local law of the second state."